**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA and the STATE OF INDIANA,** | |
| **Plaintiffs,** | |
| **v.** | **No. 2:17 CV 48** |
| **THE SANITARY DISTRICT OF HAMMOND,** | |
| **Defendant.** | |

**<u>CONSENT DECREE</u>**

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ................................................................................ 4

II. PARTIES ............................................................................................................... 4

III. BINDING EFFECT .............................................................................................. 4

IV. OBJECTIVES ....................................................................................................... 5

V. DEFINITIONS ....................................................................................................... 6

VI. COMPLIANCE REQUIREMENTS .................................................................... 13

    A.  NPDES Permit Compliance ........................................................................ 13

    B.  CSO Operations:  Maximizing Flow and Treatment ................................... 13

    C.  Revising the Combined Sewer Overflow Operational Plan ....................... 14

    D.  Completion of the 1999 Decree CSO Control Measures ........................... 15

    E.  Developing and Implementing a Final Long Term Control Plan ............... 18

    F.  Final LTCP Schedule Reconsideration Based on Financial Circumstances.............. 20

    G.  Developing and Implementing a Sewer Overflow Response Plan ........................... 24

VII. PAYMENT OF PENALTIES ............................................................................. 25

VIII. STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT........................... 26

IX. STIPULATED PENALTIES ................................................................................ 28

X. INFORMATION COLLECTION AND RETENTION ......................................... 36

XI. COSTS ................................................................................................................. 38

XII. NOTICES ........................................................................................................... 38

XIII. REPORTING REQUIREMENTS ...................................................................... 41

    A.  Review and Approval of Submissions ........................................................ 41

    B.  Supplemental Reporting in Monthly Reports of Operations ..................... 43

ii

C.   Quarterly Reports ........................................................................................................ 43

XIV. EFFECTIVE DATE .......................................................................................................... 45

XV. DISPUTE RESOLUTION .................................................................................................. 46

XVI. FORCE MAJEURE .......................................................................................................... 49

XVII. COVENANTS NOT TO SUE / RESERVATIONS OF RIGHTS ..................................... 51

XVIII. GENERAL PROVISIONS ............................................................................................. 55

XIX. RETENTION OF JURISDICTION ................................................................................... 56

XX. MODIFICATION ............................................................................................................... 56

XXI. TERMINATION ................................................................................................................ 57

XXII. PUBLIC COMMENT ...................................................................................................... 58

XXIII. INTEGRATION .............................................................................................................. 58

XXIV. APPENDICES ................................................................................................................ 58

XXV. AUTHORIZATIONS AND SERVICE ............................................................................ 59

XXVI. FINAL JUDGMENT ...................................................................................................... 60

## LIST OF APPENDICES

APPENDIX A          Requirements for HSD's Phase One Post-Construction Compliance
                    Monitoring Program

APPENDIX B          Final Long Term Control Plan Requirements and Schedule

APPENDIX C          Requirements for HSD's Sewer Overflow Response Plan (SORP)

APPENDIX D          Firm Pumping Capacities of HSD's Sewer System Pump Stations

APPENDIX E          Outfall 022 Disinfection System Implementation

APPENDIX F          State Supplemental Environmental Project

WHEREAS, this Consent Decree ("Decree") is entered into by the United States of America (the "United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), the State of Indiana (the "State"), on behalf of the Commissioner of the Indiana Department of Environmental Management ("IDEM") (collectively the "Plaintiffs"), and the Sanitary District of Hammond, Indiana ("HSD") (collectively the "Parties");

WHEREAS, Plaintiffs, the United States, on behalf of EPA, and the State of Indiana, on behalf of IDEM, simultaneously with this Decree filed a Complaint alleging, among other things, that HSD had violated the Clean Water Act ("CWA") by: (i) failing to timely and fully comply with information requests issued by EPA on February 22, 2012 pursuant to CWA § 308, 33 U.S.C. § 1318, and (ii) exceeding numeric and narrative effluent limits set in its National Pollutant Discharge Elimination System ("NPDES") Permit, including the discharge of untreated storm water and sanitary wastewater during wet and dry weather periods through combined sewer overflow outfalls ("CSO Outfalls") into the Grand Calumet and Little Calumet Rivers;

WHEREAS, the Parties previously entered into a Consent Decree on June 17, 1999 ("1999 Decree"), which required, among other things, that HSD develop and construct facilities to eliminate the use of its three largest CSO Outfalls;

WHEREAS, pursuant to the 1999 Decree, HSD has: (i) submitted and fully implemented a program for removing inflow sources from the Sewer System, including completing a program for removal of public, non-residential private, and residential down spout inflow sources; (ii) submitted and fully implemented a program for improvements to the CSO Operational Plan for the Robertsdale pump station, including rebuilding or replacing sanitary pumps and storm pumps; (iii) installed a metering and telemetry system for all pump stations in the Sewer System; (iv) constructed sewer separations, and sewer interceptors and sewer-interceptor improvements needed

1

to eliminate discharges from the Columbia Avenue, Sohl Avenue, and Johnson Avenue CSO Outfalls; (v) with the concurrence of EPA and IDEM, eliminated through closure or other methods the threat that its five former sludge lagoons posed to surface waters; and (vi) submitted a report analyzing the estimate of industrial user capacity at the WWTP;

WHEREAS, pursuant to the 1999 Decree, EPA served upon HSD a demand for stipulated penalties for HSD's alleged violations of the 1999 Decree, including: (i) failing to timely submit designs and a construction schedule for the CSO storage basin; (ii) exceeding particular numeric effluent limitations in its 2006 NPDES Permit; and (iii) violating the prohibition against dry weather CSO discharges. HSD appealed the EPA Region 5 Water Division Director's decision to assess stipulated penalties to this Court, and the United States subsequently filed a Motion for Judicial Assessment of Stipulated Penalties. To date, the Court has stayed further briefing;

WHEREAS, pursuant to the 1999 Decree, HSD completed construction of the CSO storage basin located at Columbia Avenue, and the storage basin has been in use since October 2014. HSD has eliminated the Johnson Avenue and Sohl Avenue CSO Outfalls, and IDEM has approved their removal from HSD's NPDES Permit. IDEM has also modified HSD's NPDES Permit to remove the Columbia Avenue CSO Outfall, which has been closed with a valve. Use of the Columbia Avenue CSO Outfall is considered to be unauthorized and would need to be reported as an unauthorized overflow pursuant to NPDES Permit requirements;

WHEREAS, EPA issued administrative orders to two of HSD's customer communities, the Town of Highland and the Town of Griffith, in 2011 and 2012 under docket numbers V-W-11-AO-07 and V-W-12-AO-08, respectively, for SSOs in violation of CWA § 301(a), 33 U.S.C. 1311(a) (collectively, the "Administrative Orders"). HSD accepts and treats wastewater from the Towns of Highland and Griffith pursuant to wholesale wastewater treatment contracts. These two

2

communities send wastewater flows to HSD that may contribute to CSOs in HSD's Sewer System during wet weather periods. Cooperation and coordination between HSD and these two customer communities is important to HSD's compliance with this Decree and the customer communities' compliance with their respective Administrative Orders. As of the Date of Lodging of this Decree, the Parties to this Decree are in discussions with the Towns of Highland and Griffith regarding their respective and related compliance obligations and anticipate that this Decree may include these two Towns at a future date;

WHEREAS, the Parties agree that the United States and State of Indiana's joint filing of the Complaint and entry into this Consent Decree constitute diligent prosecution by the United States and the State of Indiana under CWA § 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B), of all matters alleged in the Complaint and addressed by this Consent Decree through the Date of Lodging of this Decree;

WHEREAS, HSD denies any liability to the United States or the State arising out of the transactions or occurrences asserted by the Plaintiffs to be violations of the CWA, including CWA § 308, 33 U.S.C. § 1318, HSD's NPDES Permits, or the 1999 Decree; and

WHEREAS, the Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith and will avoid additional litigation among the Parties, and that this Decree is fair, reasonable, and in the public interest.

NOW THEREFORE, before the taking of any testimony, without the adjudication or admission of liability, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, and DECREED as follows:

## I. JURISDICTION AND VENUE

1.      For purposes of this Consent Decree, the Parties agree that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and CWA § 309(b), 33 U.S.C. § 1319(b), and over the Parties. The Parties also agree that venue is proper in this District pursuant to CWA § 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because HSD conducts business in this judicial district.

2.      For the purposes of this Decree, HSD waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. HSD shall not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## II. PARTIES

3.      "HSD" is the Sanitary District of Hammond, Indiana, and is the political subdivision that owns and operates a wastewater collection system and a wastewater treatment plant ("WWTP") in the City of Hammond, Indiana, and operates certain wastewater collection facilities in the Town of Munster, Indiana.

4.      The "United States" is Plaintiff, the United States of America, acting on behalf of EPA.

5.      The "State" is Plaintiff, State of Indiana, acting on behalf of IDEM.

## III. BINDING EFFECT

6.      Upon the Effective Date, this Decree supplants the 1999 Decree in its entirety.

7.      This Decree applies to and is binding upon the United States and the State, and upon HSD and any successors and assigns or other entities or persons otherwise bound by law, including, but not limited to, Fed. R. Civ. P. 65(d). No transfer of ownership or operation of the POTW, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve

4

HSD of its obligation to ensure that the terms of this Decree are implemented. At least thirty (30) Days prior to such transfer, HSD shall provide a copy of this Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5 and the United States Department of Justice, in accordance with Section XII (Notices) of this Decree. Any attempt to transfer ownership or operation of the POTW without complying with this Paragraph constitutes a violation of this Decree.

8.     HSD shall make available a copy of this Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of the Decree, as well as to any contractor retained to perform work required under this Decree. HSD shall condition any such contract upon performance of the work in conformity with the terms of this Decree.

9.     In any action to enforce the terms of this Decree, HSD shall not raise as a defense the failure of its officers, directors, agents, servants, contractors, or employees or any other persons or entities provided for by Fed. R. Civ. P. 65(d) to take any actions necessary to comply with the provisions of this Decree, except to the extent provided in Section XVI (Force Majeure) of this Decree.

## IV. OBJECTIVES

10.     All plans, measures, reports, construction, maintenance, operational requirements, and other obligations in this Decree, or resulting from the activities required by this Decree shall have the objective of causing HSD to achieve and maintain full compliance with the CWA.

## V. DEFINITIONS

11.    Unless otherwise defined herein, terms used in this Decree shall have the meaning given to those terms in the CWA, 33 U.S.C. § 1251 et seq., the regulations promulgated thereunder, and HSD's NPDES Permit.

a.    "1997 Long Term Control Plan" or "1997 LTCP" means the Long Term Control Plan developed by HSD in 1997.

b.    "1999 Decree" means the consent decree, including its appendices, entered by the United States District Court for the Northern District of Indiana on June 17, 1999 that resolved the allegations in the United States' 1999 complaint against HSD for violations of the Clean Water Act and the Rivers and Harbors Act on specified terms and conditions.

c.    "1999 Decree CSO Control Measures" means the construction of the 32 million gallon basin and CSO Outfall 022, as identified in HSD's NPDES Permit, located on the west side of Columbia Avenue, and related control measures, actions, and/or other activities for storage of flows and to eliminate CSOs from the Columbia Avenue, Sohl Avenue, and Johnson Avenue CSO Outfalls.

d.    "2015 Draft LTCP" means the Long Term Control Plan that HSD submitted to EPA and IDEM on June 5, 2015.

e.    "Achieve(s) Full Operation" means completion of construction and installation of equipment or infrastructure for the 1999 Decree CSO Control Measures such that the equipment or infrastructure has been placed in full operation and is performing as designed.

f.    "Decree" or "Consent Decree" means this Decree and all appendices attached hereto and listed in Section XXIV.

6

g.      "Building/Property Backup" means a wastewater release and backup into a building or onto property that is caused by blockages, flow conditions, or other conditions in the Sewer System. A wastewater backup or release that is caused solely by conditions in a Private Service Connection Lateral is not a Building/Property Backup for purposes of this Decree.

h.      "CSO Outfall" or "Outfall" means a type of "point source" (as that term is defined in CWA § 501(14), 33 U.S.C. § 1361(14)), that serves as a Discharge point from HSD's Combined Sewer System.

i.      "CWA" means the Clean Water Act, 33 U.S.C. § 1251 et seq., as amended, and the regulations promulgated thereunder.

j.      "Collection Pump Station" means a pump station that pumps sanitary and/or combined sanitary and storm water to the WWTP.

k.      "Combined Sewer Overflow" or "CSO" means any Discharge from any Outfall designated as a CSO Outfall in HSD's NPDES Permit.

l.      "Combined Sewer Overflow Operational Plan" or "CSOOP" means HSD's plan approved by EPA and IDEM, including any subsequent annual updates or revisions to the plan approved by EPA and IDEM, for implementing, among other things, the Nine Minimum Controls contained in the EPA Combined Sewer Overflow (CSO) Control Policy found at 59 Fed. Reg. 18,688 (April 19, 1994).

m.      "Combined Sewer System" or "CSS" means the collection and conveyance system (including all pipes, force mains, gravity sewers segments, storage facilities, overflow structures, regulators, pump stations, manholes, and components thereto), and wet weather treatment facilities located prior to the WWTP's headworks, that are owned or operated by HSD

7

and are designed to store and convey sanitary waste waters (domestic, commercial, and industrial) and storm water through a single pipe system to the HSD WWTP.

n.      "Combined Sewer Overflow Control Policy" or "CSO Control Policy" means the U.S. EPA policy found at 59 Fed. Reg. 18,688 (April 19, 1994).

o.      "CSO Pump Station" means a pump station that pumps combined sanitary and storm water to both receiving waters and the WWTP during wet weather, and to the WWTP during dry weather.

p.      "Date of Lodging" means the date upon which this Decree is filed with the Court, before a thirty (30) day period during which the United States accepts comments from the public regarding the terms of this Decree. The Date of Lodging is, by necessity, at least thirty (30) days prior to the Effective Date of this Decree.

q.      "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

r.      "Dewatering Pump" means the smaller capacity pumps within HSD's CSO lift stations that direct any Dry Weather Flows from the CSO interceptors back to the CSS for treatment at the WWTP to prevent Dry Weather Discharges that would otherwise occur if rising sump levels activated the large CSO pumps.

s.      "Discharge" means any "discharge of a pollutant" as defined in 40 C.F.R. § 122.2 and 327 Ind. Admin. Code 5-1.5-11.

t.      "Dry Weather Discharge" means any Dry Weather Flows exiting from a CSO.

u.      "Dry Weather Flows" means the combination of domestic sewage, groundwater infiltration, commercial and industrial wastewaters, and any other non-precipitation related flows.

v.      "Dry Weather" means a period in which there has not been a measurable precipitation event within a twenty-four (24) hour period.

w.      "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

x.      "Effective Date" is defined as provided in Section XIV (Effective Date).

y.      "Final LTCP Control Measures" means the improvements identified in the Final LTCP, as approved by EPA and IDEM pursuant to the Decree, and includes the Design Criteria and the Performance Criteria identified for each such measure.

z.      "Final Long Term Control Plan" or "Final LTCP" means HSD's 2015 Draft LTCP as modified to comply with the requirements and schedule in Section VI.E and Appendix B of this Decree, and includes all of the information required in Sections A-D of Appendix B, including the Public and Regulatory Agency Participation Program, the Sensitive Areas/Stream Reach Characterization and Evaluation Study Report, the Sewer System Characterization and Monitoring Program, the Receiving Stream & Sewer System Modeling Program, and the Final LTCP Control Measures Identification and Implementation Schedule.

aa.     "Forward Pump" means a pump within a Collection System Pump Station (other than a Dewatering Pump) as identified in Appendix F that conveys sanitary or combined sewage from the pump station's wet well to a downstream combined or sanitary sewer. A "Forward Pump" does not convey flow to a CSO or storm water outfall.

9

bb.    "Gravity Sewer Segment" or "Sewer Segment" means pipes that receive, contain, and convey wastewater not normally under pressure, but intended to flow unassisted under the influence of gravity, including trunk sewers.

cc.    "HSD" means the Sanitary District of Hammond, Indiana.

dd.    "IDEM" means the Indiana Department of Environmental Management and any successor departments or agencies of the State.

ee.    "MGD" means a flow rate expressed in millions of gallons per day. A flow rate for a shorter period of time, such as an hour, may also be expressed in MGD. For example, a flow of one million gallons in an hour would be equivalent to a daily flow of 24 MGD.

ff.    "NPDES Permit" means HSD's National Pollutant Discharge Elimination System permit no. IN 0023060 and any permit that succeeds such permit and is in effect at a particular time in question.

gg.    "Outfall 022 Disinfection System" means the equipment or infrastructure for the disinfection system at CSO Outfall 022, further described in Appendix E and the Disinfection Implementation Plan described in Paragraph 21 of this Decree.

hh.    "Paragraph" means a portion of this Decree identified by an Arabic numeral.

ii.    "Parties" means the United States, the State, and HSD.

jj.    "Phase One Post-Construction Compliance Monitoring Program" means the Post-Construction Compliance Monitoring Program (set forth in Appendix A of this Decree) related to the 1999 Decree CSO Control Measures.

10

kk.    "Phase Two Post-Construction Compliance Monitoring Program" means the post-construction compliance monitoring program that will be required after HSD implements the Final Long Term Control Plan for the HSD Combined Sewer System.

ll.    "Plaintiffs" means the United States and the State.

mm.    "POTW" means the Publicly Owned Treatment Works and together the WWTP, the Combined Sewer System, and the Separate Sanitary Sewer System that are owned and/or operated by HSD.

nn.    "Private Service Connection Lateral" means a portion of each of the Sewer System, not owned by HSD, used to convey wastewater from a building or buildings to a portion of the Sewer System owned by HSD.

oo.    "Pump Station" means a facility comprised of pumps that lift wastewater to a higher hydraulic elevation, including all related electrical, mechanical, and structural systems necessary to operate that Pump Station.

pp.    "Sanitary Sewer Overflow" or "SSO" means any Discharge to waters of the State or the United States from HSD's Separate Sanitary Sewer System through point sources not specified in HSD's NPDES Permit, as well as any release of wastewater from HSD's Separate Sanitary Sewer System to public or private property that does not reach waters of the State or the United States, such as a release to a land surface or into a structure; provided, however, that such releases that are caused solely by conditions in a Private Service Connection Lateral are not SSOs for the purpose of this Decree. As such, the term SSO includes Building/Property Backups caused in whole or in part by conditions in HSD's Separate Sanitary Sewer System.

qq.    "Separate Sanitary Sewer System" or "SSS System" means all portions of the collection and conveyance system located prior to the WWTP's head works that are owned

11

and/or operated by HSD that are designed to store and convey sanitary waste waters (domestic, commercial, and industrial) and do not also store or convey storm water through the same pipe to the HSD WWTP.

rr.    "Section" means a portion of this Decree identified by a Roman numeral.

ss.    "Sewer Overflow Response Plan" or "SORP" means the plan that HSD will develop and implement pursuant to Appendix C of this Decree.

tt.    "Sewer System" means both the Combined Sewer System and the Separate Sanitary Sewer System, prior to the head works of the WWTP, that are owned and/or operated by HSD.

uu.    "Sewer System Release" means a release of waste water from either the Combined Sewer System or the Separate Sanitary Sewer System.

vv.    "State" means the State of Indiana.

ww.    "Typical Year" means the typical year of precipitation volume, frequency, duration, and intensity that HSD shall determine, and EPA and IDEM shall approve, as part of HSD's development of its Final LTCP under this Decree.

xx.    "United States" means the United States of America, acting on behalf of EPA.

yy.    "WWTP" or "Waste Water Treatment Plant" means, for purposes of this Consent Decree, the system of treatment works, regulatory devices, equipment, and other facilities and appurtenances installed to treat sewage, industrial wastes, and other wastes delivered by a system of sewers and other related facilities, including the facility located at 5143 Columbia Avenue, Hammond, Indiana, 46327.

zz.    "Wet Weather Flows" means any flow that is in addition to "Dry Weather Flows".

## VI. COMPLIANCE REQUIREMENTS

**A.    NPDES Permit Compliance**

12.    HSD shall comply with the terms and conditions in its NPDES Permit.

**B.    CSO Operations:  Maximizing Flow and Treatment**

13.    Requirement to Maximize Flow through HSD's Sewer System.

HSD shall maximize the flow through HSD's Sewer System, consistent with the hydraulic constraints of the Sewer System, including maximizing the use of the Dewatering Pumps at each Combined Pump Station and the pumps at each Collection Pump Station located downstream from that Combined Pump Station. HSD shall, at a minimum, utilize the firm capacity of all Dewatering and Forward Pumps at each pump station before commencing to discharge through a CSO at that pump station, at which point HSD may cease operation of the Dewatering Pumps. The firm capacity of each pump station shall be determined based upon the total capacity of the station, as provided in Appendix D of this Decree, with all pumps, including Dewatering Pumps, installed at the pump station that are used to pump flow to or towards the WWTP in operation, less one pump unit (the largest in capacity) on standby or out of service. In pump stations in which it is reasonably practicable, HSD shall also make use of the station's standby or redundant units unless HSD, using best professional judgment, has a sound technical basis to believe that the use of redundant pump(s) will:  (a) cause harm (beyond normal wear), to the pump station or the adjoining portions of the Sewer System or cause a bypass or an upset to the POTW; (b) result in a Sewer System Release, CSO or Building/Property Backups in the downstream portion of the Sewer System; or (c) not result in an increase in station capacity equal to 50% of the standby or redundant pump's nominal

13

maximum rated capacity. For purposes of this Paragraph, a sound technical basis does not include HSD's failure to conduct appropriate operations and maintenance.

14.     Requirement to Maximize Flow through HSD's WWTP.

HSD's current WWTP peak flow capacity is 68 MGD. HSD shall attain and maintain a flow to and through its WWTP consistent with the peak capacity, including any increased peak capacity associated with implementation of an approved Final LTCP or any other future capital projects, for the duration of all CSOs from Outfall 022, unless limited by then-current secondary solids settleability and the need to prevent excessive secondary solids washout, or other factors such as a clarifier being out of service for maintenance. In all cases where one or more factors limit WWTP capacity to less than the WWTP's peak capacity, HSD shall maintain the maximum treatment rate possible in light of the aforementioned factors. During any CSO from Outfall 022 in which such a factor prevents HSD from maintaining flow consistent with the peak capacity for the duration of the CSO, HSD shall collect data and other information as is necessary to document: (a) the reason(s) that it was unable to maintain a flow consistent with the peak capacity, and (b) that the flow rate maintained was the maximum treatment rate possible under the circumstances.

15.     Dry Weather Discharges from HSD's Combined Sewer System are prohibited.

**C.     Revising the Combined Sewer Overflow Operational Plan**

16.     On the following two occasions, as required in its NPDES Permit, and in accordance with Sections XII (Notices) and XIII.A (Review and Approval of Submissions) of this Decree, HSD shall submit to EPA and IDEM for review and approval its updated Combined Sewer Overflow Operational Plan ("CSOOP"), reflecting its current facilities and operations and documenting the steps that it is taking to comply with the Nine Minimum Controls, as required in

14

Attachment A, Section III of its NPDES Permit, and the EPA CSO Control Policy, 59 Fed. Reg. 18, 688 (April 19, 1994):

        a.        Within sixty (60) Days of the date of Entry of this Decree; and

        b.        Within 180 Days of the date that HSD completes implementation of the Final LTCP.

17.      Upon notice of EPA's approval of the updated CSOOP, HSD shall implement its approved updated CSOOP.

**D.      Completion of the 1999 Decree CSO Control Measures**

18.      HSD has constructed a 32-million gallon basin, identified as Outfall 022 in its NPDES Permit, located on the west side of Columbia Avenue, which has eliminated CSOs from the Sohl Avenue, Johnson Avenue, and Columbia Avenue CSO Outfalls.

19.      HSD Achieved Full Operation of the 1999 CSO Control Measures on October 1, 2015.

20.      HSD shall allow no more than four (4) Discharges in a Typical Year as the Performance Criteria for CSO Outfall 022. This Performance Criteria for Outfall 022 shall be in effect unless and until the approved Final LTCP requires otherwise.

21.      Consistent with the schedule identified in Appendix E to this Decree (Outfall 022 Disinfection System Implementation Protocol), HSD shall:  (a) complete construction of all equipment required for the disinfection system for Outfall 022 (the Columbia Basin); (b) initiate and conduct Phase One Post-Construction Compliance Monitoring consistent with the requirements and schedule in Paragraphs 23 and 24 and Appendices A and E of this Decree; and (d) submit the results of the Phase One Post-Construction Compliance Monitoring to EPA and IDEM for review and approval, as required in Paragraph 23 of this Decree and in accordance with

Sections XII (Notices) and XIII.A (Review and Approval of Submissions). Within thirty (30) Days of EPA's and IDEM's approval of the Phase One Post-Construction Monitoring Report, HSD shall request from IDEM a modification to HSD's NPDES Permit to include the requirement to disinfect (and remove disinfection residuals from, if necessary) Discharges from Outfall 022.

22.    All Discharges from the Columbia Ave CSO Outfall shall be prohibited and any Discharges from the Columbia Ave CSO Outfall shall be subject to the requirements for reporting under Part II.C.4 of HSD's NPDES Permit.

23.    Phase One Post-Construction Compliance Monitoring Program.

a.    All equipment necessary to conduct modeling and monitoring activities for the Phase One Post-Construction Compliance Monitoring Program under Appendix A of this Decree shall be installed and operating by no later than April 1, 2017.

b.    By no later than April 1, 2017, HSD shall begin Phase One Post-Construction Compliance Monitoring for the 32 MG CSO Storage Basin and by no later than April 1, 2018 for the Outfall 022 Disinfection System, consistent with the requirements in Appendix A (Phase One Post-Construction Compliance Monitoring Program) and Appendix E (Outfall 022 Disinfection System Implementation) of this Decree. The purposes of the modeling and monitoring conducted pursuant to Appendices A and E of this Decree are to determine whether HSD has achieved compliance with the Performance Criteria in Paragraph 20 and to optimize operation of the disinfection system to ensure that Discharges from Outfall 022 meet the terms of the technology-based and water quality-based requirements of the CWA, state law and regulation, and the applicable provisions of HSD's NPDES Permit.

c.    HSD shall conduct Phase One Post-Construction Compliance Monitoring for a period of twelve (12) months concluding on April 1, 2018 for the 32 MG Storage Basin and

16

on April 1, 2019 for the Outfall 022 Disinfection System, or, upon written request by HSD, a subsequent date as approved by EPA and IDEM so that HSD may obtain the data necessary to complete modeling and monitoring.

        d.     Within 30 days of completing the Phase One Post-Construction Compliance Monitoring, HSD shall submit to EPA and IDEM for review and approval, in accordance with Appendix A and Sections XII (Notices) and XIII.A (Review and Approval of Submissions), a Phase One Post-Construction Compliance Monitoring Report, to document in detail the monitoring and modeling activities related to the 1999 Decree CSO Control Measures and the disinfection system at CSO Outfall 022.

        e.     The Phase One Post-Construction Compliance Monitoring Program shall be complete upon EPA and IDEM approval of the Phase One Post-Construction Monitoring Report.

        24.    If EPA and IDEM determine that the results of Phase One Post-Construction Compliance Monitoring do not demonstrate compliance with the Performance Criteria in Paragraph 20 and/or do not demonstrate that the disinfection system is optimized to ensure that Discharges from Outfall 022 meet the terms of the technology-based and water quality-based requirements of the CWA, state law and regulation, and the applicable provisions of HSD's NPDES Permit, EPA and IDEM shall provide a written determination to HSD in accordance with Section XII (Notices). Within ninety (90) Days after this determination, HSD shall submit to EPA and IDEM for their review and approval, consistent with the requirements of Appendices A and E and in accordance with Sections XII (Notices) and XIII.A (Review and Approval of Submissions) of this Decree, a Supplemental Compliance Plan that sets forth the actions that HSD shall take for Outfall 022 to achieve compliance with the Performance Criteria in Paragraph 20, and to ensure

that Discharges from Outfall 022 meet the terms of the technology-based and water quality-based requirements of the CWA, state law and regulation, and the applicable provisions of HSD's NPDES Permit, and a schedule for taking such actions. Upon approval by EPA and IDEM, HSD shall implement the Supplemental Compliance Plan in accordance with the schedule specified therein.

25.    As part of the quarterly reports to be submitted under Section XIII.C of this Decree, HSD shall report on the progress made on the 1999 Decree CSO Control Measures and the Disinfection System Implementation, including, but not limited to:  (a) the on-going and final costs of the project; and (b) the status of Phase One Post-Construction Compliance Monitoring and drafting of the accompanying Report.

### E.    Developing and Implementing a Final Long Term Control Plan

26.    In accordance with all of the requirements of Paragraph 27 (Final LTCP), HSD shall revise its Final LTCP to:  (a) incorporate the 1999 Decree CSO Control Measures; and (b) address, as set forth below, all of the remaining CSO Outfalls in the HSD Sewer System. The Final LTCP shall provide for the design, construction, and implementation of all improvements to the WWTP and the Sewer System and other measures necessary to minimize the number, duration, and volume of Wet Weather Flows from all of HSD's CSO Outfalls, and shall ensure that Wet Weather Flows from all of HSD's CSO Outfalls that do occur comply with the technology-based and water quality-based requirements of the CWA, State law and regulation, and HSD's NPDES Permit.

27.    Final LTCP.  As stated in Sections A-D of Appendix B (Final LTCP Requirements), on June 5, 2015, HSD submitted to EPA and IDEM an engineering report, known as the 2015 Draft LTCP. Since then, EPA and IDEM have exchanged two rounds of written comments and

engaged in productive discussions with HSD. By March 1, 2018, HSD shall submit a Final LTCP to EPA and IDEM, in accordance with Section E of Appendix B and Sections XII (Notices) and XIII.A (Review and Approval of Submissions) of this Decree. The Final LTCP shall:

a. describe the results of the Public and Regulatory Agency Participation Program and the details of the planning process implemented in accordance with Sections A-D of Appendix B, consistent with EPA's Combined Sewer Overflows Guidance for Long Term Control Plan, EPA Doc. 832-B-95-002, September 1995;

b. describe each Final LTCP Control Measure selected by HSD for its Final LTCP after conducting the financial capability assessment and alternatives analysis in accordance with Section E of Appendix B;

c. include a schedule for design, construction, and implementation of the Final LTCP Control Measures for the WWTP and the Sewer System, and other measures required under the Final LTCP; and

d. describe the Phase Two Post-Construction Compliance Monitoring Program that shall be implemented upon completing construction and implementation of the Final LTCP Control Measures.

28. The schedule included in the Final LTCP shall include completion of design and construction, and achievement of full operation of all Sewer System and WWTP Final LTCP Control Measures necessary to ensure compliance with the technology-based and water quality-based requirements of the CWA, state law and regulation, and HSD's NPDES Permit by no later than March 1, 2035, except as may be provided by Section VI.F (Final LTCP Schedule Reconsideration Based on Financial Circumstances), Section XVI (Force Majeure), Section XX

19

(Modification), or unless the Court finds, following HSD's invocation of the dispute resolution procedures in Section XV, that an extension to the schedule is justified.

       29.    <u>Implementing and Achieving Compliance with the Final LTCP</u>.

       a.    Upon EPA and IDEM approval of the Final LTCP, HSD shall implement the approved Final LTCP in accordance with the approved schedule therein.

       b.    <u>Phase Two Post-Construction Compliance Monitoring Program</u>.  After implementing the approved Final LTCP, HSD shall demonstrate compliance with: (1) the Final LTCP Control Measure's Design and Performance Criteria in the Final LTCP, and (2) the technology-based and water quality-based requirements of the CWA, state law and regulation, and the applicable provisions of HSD's NPDES Permit, by implementing the Phase Two Post-Construction Compliance Monitoring Program portion of their approved Final LTCP, as required under Appendix B of this Decree, and in accordance with the Final LTCP schedule. If the results of the Phase Two Post-Construction Compliance Monitoring Program do not demonstrate such compliance, then within one hundred eighty (180) Days of receiving notice from EPA or IDEM that compliance has not been demonstrated, or a different time period agreed to in writing by the Parties, HSD shall submit to EPA and IDEM, pursuant to Sections XII (Notices) and XIII.A (Review and Approval of Submissions ), a Supplemental Compliance Plan that describes the additional improvements and/or other Final LTCP Control Measures that HSD shall implement to achieve compliance and a proposed schedule for taking such actions. Upon approval by EPA and IDEM pursuant to Section XIII.A of this Consent Decree (Review and Approval of Submissions), HSD shall implement the approved Supplemental Compliance Plan in accordance with the schedule specified therein.

**F.**    **<u>Final LTCP Schedule Reconsideration Based on Financial Circumstances</u>**

30.     The schedule by which HSD shall initiate construction and achieve full operation of all Final LTCP Control Measures shall be as expeditious as practicable, but in no event later than March 1, 2035, unless HSD demonstrates in an updated Financial Capability Analysis (prepared in accordance with Appendix B), that the expected per household cost of the Improvements and other Final LTCP Control Measures will cause HSD's cost per household to exceed 2.5% of the Median Household Income ("MHI") for HSD's entire service area, which includes the City of Hammond and the Town of Munster, and the customer communities of the Towns of Griffith, Highland, and Whiting, calculated using EPA's "Combined Sewer Overflows Guidance for Financial Capability Assessment and Schedule Development," EPA 8320B-97-004, published February 1997.

31.     HSD is limited to one schedule extension request during the term of this Decree. The schedule extension request must be submitted with an accompanying updated Financial Capability Assessment and must include a demonstration, complete with supporting documentation, that:

a.     The Residential Indicator, when calculated in accordance with EPA's Financial Capability Assessment Guidance as modified by the requirements of Paragraph 32 below, using the inputs described and defined in Paragraph 33 of this Section, and using a reasonable engineering estimate of the remaining costs of completing construction of the improvements and controls described in the Final LTCP expressed in the value of dollars during the year in which HSD submits the schedule extension request, but excluding the costs of the Phase I and Phase II Post-Construction Compliance Monitoring Programs, exceeds 2.5% of MHI;

b.     A description of each project or requirement and its associated deadline in the approved Final LTCP schedule for which HSD seeks an extension; and

21

c.     The request for an extension on any Final LTCP project is as short as reasonably possible, and includes an accompanying justification, and shall not extend the original completion date for that the specified project as contained in the approved Final LTCP schedule by more than five years.

d.     If the request in subparagraph c above results in the extension of a deadline for any other project or of the March 1, 2035 deadline for the Final LTCP, a separate accompanying justification shall be provided.

e.     The extension of any project shall not result in extending by more than five years the March 1, 2035 deadline for completion of construction of all improvements and other Final LTCP Control Measures.

32.    To determine HSD's MHI as required by Paragraph 30, HSD shall use MHI data for the most recent year from either the Federal Census or American Community Survey ("ACS"), whichever is the most current. If the most current ACS data includes both a one-year estimate and a three-year estimate of MHI, HSD shall use the one-year estimate to determine its MHI, although HSD may also submit an MHI figure based on the three-year estimate of MHI under the ACS.

33.    To calculate and determine HSD's Residential Indicator at the time a schedule extension request is submitted, HSD shall use the following inputs:

a.     Current wastewater and sewer annual operation and maintenance expenses calculated as total expenses less depreciation in HSD's Comprehensive Annual Financial Report ("CAFR") for the most recent year, but only if the CAFR accurately states HSD's operation and maintenance expenses. If HSD's CAFR for the most recent year either does not exist or does not accurately state their operation and maintenance expenses, HSD shall calculate and determine this

22

input with appropriate accounting records, including source documents, and submit to Plaintiffs copies of the accounting records and source documents;

b.      Current wastewater and sewer annual debt service calculated as the total principal and interest payments on bonds and notes from the financing activities section of the cash flow statement in HSD's CAFR for the most recent year, but only if the CAFR accurately reflects the principal and interest payments. If HSD's CAFR for the most recent year either does not exist or does not accurately state HSD's principal and interest payments, HSD shall calculate and determine this input with appropriate accounting records, including source documents and submit to Plaintiffs copies of the accounting records and source documents;

c.      Reasonable documented engineering estimates projecting the increase in operation and maintenance expenses expected after completing construction of HSD's Final LTCP, expressed in value of dollars for the year during which HSD submits the schedule extension request;

d.      The increased annual capital costs based on the expected financing of a reasonable, documented engineering estimate of the costs of completing construction of HSD's Final LTCP and all other WWTP and sewer capital costs expressed in the value of dollars during the year that HSD submits the schedule extension request. To support HSD's calculation of this input, HSD shall submit to Plaintiffs an explanation of the basis for, and calculation of, the annual cost estimate and the engineering estimates, accounting records, and source documents on which HSD relied to calculate this input;

e.      When calculating HSD's residential share of wastewater treatment costs in accordance with EPA's CSO Financial Capability Assessment and Schedule Development Guidance, HSD shall use the most recent year of Federal Census or ACS data and billing data

23

regarding HSD's customer base not reflected in such data. HSD also shall use the ratio, as described in the Guidance, between residential wastewater flow (including residential infiltration and inflow) and total wastewater flow to calculate the residential share of wastewater treatment costs.

f.    When calculating the total number of households in HSD's service area, HSD shall count each single family house, and each unit in multi-family housing structures such as apartment buildings and duplexes as one household, but shall not count households that have onsite sewage disposal systems. To the extent that customer billing data does not accurately reflect the number of units in multi-family housing structures, HSD shall use ACS and Federal Census data to more accurately estimate the total number of households in HSD's service area.

34.    In addition to the calculation of the Residential Indicator as required in Paragraph 33.a through 33.f, HSD may submit an additional calculation of the Residential Indicator using alternative inputs that HSD contends produces a more accurate calculation of the Residential Indicator, provided such inputs are consistent with EPA's "Combined Sewer Overflows Guidance for Financial Capability Assessment and Schedule Development," EPA 8320B-97-004, published February 1997.

35.    If either EPA or IDEM denies in writing HSD's request for an extension for completing any of the deadlines in the Final LTCP, in whole or in part, or if more than 90 Days elapses from the date that HSD submit its request for an extension, and HSD has not either: (1) received a written denial of HSD's schedule extension request from either the EPA or IDEM; or (2) entered into a written agreement pursuant to this Subsection VI.F (Final LTCP Schedule Reconsideration Based on Financial Circumstances), HSD may pursue dispute resolution pursuant to Section XV of this Consent Decree (Dispute Resolution).

**G.    Developing and Implementing a Sewer Overflow Response Plan**

24

36.     All SSOs are prohibited by the Clean Water Act, the Indiana Code, and this Decree. All SSOs are subject to stipulated penalties under Section IX of this Decree.

37.     HSD shall prevent and/or reduce Building/Property Backups and unpermitted Discharges originating from conditions in its Sewer System by developing and implementing a Sewer Overflow Response Plan ("SORP") for its Sewer System in accordance with the requirements in Appendix C of this Decree.

## VII. <u>PAYMENT OF PENALTIES</u>

38.     a.     <u>Civil Penalties</u>.  Within sixty (60) Days after the Effective Date, HSD shall pay a civil penalty in the amount of $225,000 to the United States and $22,500 to the State for the violations alleged in the Complaint, together with interest from the Date of Lodging of this Decree, accruing at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.

b.     <u>Stipulated Penalties Under the 1999 Decree</u>.  Within sixty (60) Days after the Effective Date, HSD shall pay stipulated penalties in the amount of $313,500 to the United States for alleged violations of the 1999 Decree, together with interest from the Date of Lodging of this Decree, accruing at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. In lieu of paying the State a stipulated penalty in the amount of $313,500 for alleged violations of the 1999 Decree, plus interest, HSD shall construct and operate the Outfall 022 Disinfection System as provided in Paragraph 21 and Appendix E (Outfall 022 Disinfection System Implementation) of this Decree.

39.     Payments to the United States shall be made by certified or cashier's check in the amount due payable to the U.S. Department of Justice and referencing the above captioned case name, the assigned civil action case number, and DOJ No. 90-5-1-1-3308/2, and shall be delivered to the Financial Management Unit of the U.S. Attorney's Office for the Northern District of

Indiana, Hammond Division, 5400 Federal Plaza, Suite 1500, Hammond, Indiana 46320. At the time of payment, HSD shall send a copy of the transmittal documentation (which should reference the assigned civil action case number and DOJ No. 90-5-1-1-3308/2), together with a transmittal letter, which shall state that the payment is for the civil and/or stipulated penalties owed pursuant to the Decree in *United States and the State of Indiana v. Sanitary District of Hammond,* to the United States in accordance with Section XII (Notices) of this Decree; by email to acctsreceivable.CINWD@epa.gov; and by first class U.S. mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

40.     Payment to the State shall be made by certified check payable to:

> Cashier:
> Indiana Department of Environmental Management
> 100 N. Senate Ave
> MC 50-10C
> Indianapolis, IN 46204-2251

HSD shall notify the State of this payment in accordance with Section XII (Notices) of this Decree, by correspondence identifying the case name, court, and this case's assigned civil action number.

41.     <u>Late Payment of Civil and Stipulated Penalties Due</u>.  If HSD fails to pay the civil penalty or the stipulated penalty required to be paid under Section VII (Payment of Penalties) of this Decree when due, HSD shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

VIII. <u>STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT</u>

42.     HSD shall perform a State Supplemental Environmental Project ("State SEP") in accordance with Appendix F of this Decree. The State SEP shall consist of the construction of a

26

bike trail with bioswale drainage located in the City of Hammond, Indiana, for the purpose of reducing storm water runoff. HSD estimates in good faith that the cost to implement the State SEP is approximately $555,000.

43.     HSD shall complete the State SEP within three (3) years of the Effective Date of this Decree. HSD shall include in its quarterly report, submitted to EPA and IDEM pursuant to and consistent with Section XIII.C (Quarterly Reports) of this Decree, the status of all of its efforts taken pursuant to this Appendix F, including detailing HSD's progress on implementing the State SEP in accordance with this Decree. In performing the State SEP, HSD shall comply with all applicable federal, state, and local laws and regulations, and shall obtain and comply with any necessary licenses or permits.

44.     HSD is responsible for the satisfactory completion of the State SEP in accordance with the requirements of this Decree. "Satisfactory completion" shall mean that the construction of all necessary infrastructure for the bike trail and accompanying bioswale drainage system has been completed. HSD may use contractors or consultants in planning and implementing the State SEP.

45.     Within thirty (30) Days of completion of the State SEP, HSD shall submit to IDEM, for review and approval by IDEM in accordance with Section XIII.A (Review and Approval of Submissions) of this Decree, a State SEP Completion Report (a) detailing the work completed; (b) itemizing costs incurred in performing the State SEP and providing supporting documentation; and (c) certifying that the State SEP has been completed in accordance with this Decree and Appendix F of this Decree.

46.     After receiving the State SEP Completion Report, IDEM shall provide written notification to HSD about whether or not HSD has satisfactorily completed the SEP. If HSD fails

27

to complete the State SEP in accordance with Section VIII and Appendix F of this Decree, HSD shall pay to IDEM a stipulated penalty of $202,500, plus interest at the rate established by Ind. Code § 24-4.6-1-101. Interest shall be calculated from the Effective Date of this Decree. HSD shall pay this stipulated penalty within sixty (60) Days of the date of IDEM's written notice to HSD demanding payment.

### IX. <u>STIPULATED PENALTIES</u>

47.    HSD shall be liable for stipulated penalties to the United States and the State for violations of this Decree as specified below, unless excused under Section XVI (Force Majeure) of this Decree. A violation includes failing to perform an obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

48.    The following stipulated penalties shall be applicable for noncompliance with the numerical effluent limits set forth in HSD's NPDES Permit:

| Parameter | Penalty |
|---|---|
| Daily concentration and mass limits | $1,000 per day for the first two days of violation in any month of an individual parameter and $2,000 per day after the first two days |
| 7-day average concentration and mass limits | $8,000 per week per parameter |
| 30-day average concentration and mass limits | $12,000 per month per parameter |
| 30-day average loading limit | $12,000 per month per parameter |

49.    The following stipulated penalties shall be applicable for each Dry Weather Discharge ("DWD") in violation of Paragraph 15:

28

| Period of noncompliance | Penalty |
|---|---|
| 1st to 3rd day of DWD | $2,000 per day per violation |
| 4th to 10th day of DWD | $4,000 per day per violation |
| After 10th day of DWD | $8,000 per day per violation |

    a.    If a CSO Outfall Discharges for more than twenty-four (24) hours after a precipitation event, but less than seventy-two (72) hours after the same precipitation event, then, simultaneous with its submission of the Discharge Monitoring Report on which the CSO Discharge is reported, HSD may elect to submit a written report to EPA and IDEM, in accordance with Sections XII (Notices) and XIII.A (Review and Approval of Submissions), containing information sufficient to demonstrate whether the CSO is not a Dry Weather Discharge. Such information shall include:

    i.    the amount of rain (or water-equivalent inches of snowmelt) that occurred on each of the preceding five (5) 24-hour periods;

    ii.    the NPDES permitted CSO Outfall name and number;

    iii.    the date(s) and time period of the overflow;

    iv.    detailed flow data for the WWTP for each of the five (5) preceding 24 hour periods and during the period of the Discharge;

    v.    the cause of the Discharge, including information sufficient to demonstrate whether the overflow was due to the introduction of precipitation-related flow into HSD's Combined Sewer System or whether the Discharge was the result of Dry Weather Flows in the Combined Sewer System; and

    vi.    if HSD acknowledges that the CSO Discharge is a Dry Weather Discharge, a description of any measures HSD has implemented to prevent and minimize any such future Discharges.

      b.      Nothing in this Decree shall be construed to waive any defense HSD may have or assert in connection with a claim of the occurrence of any Dry Weather Discharge, including, but not limited to, defenses based on the information provided in this Paragraph.

50.      The following stipulated penalties shall be applicable for each Sanitary Sewer Overflow ("SSO") which occurs from the Separate Sanitary Sewer System, in violation of Paragraph 36:

      a.      <u>SSOs That Reach Waters of the US</u>

| Volume of SSO | Penalty |
|---|---|
| Less than 1,000 gallons | $1,000 per day per violation |
| 1,000 to 10,000 gallons | $4,000 per day per violation |
| Greater than 10,000 gallons | $8,000 per day per violation |

b.    SSOs that Do Not Reach Waters of the US

| Volume of SSO | Penalty |
|---|---|
| Less than 1,000 gallons | $1,000 per day per violation |
| 1,000 to 10,000 gallons | $4,000 per day per violation |
| Greater than 10,000 gallons | $8,000 per day per violation |

51.    The following stipulated penalties shall be applicable for failing to meet any requirement set forth in: (a) Paragraph 20; (b) Paragraph 21 or Appendix E of this Decree (Outfall 022 Disinfection System Implementation); and (c) the Phase One Post-Construction Compliance Monitoring Program set forth in Paragraphs 23 and 24:

| Period of noncompliance | Penalty |
|---|---|
| 1st to 10th day of violation | $1,500 per day per violation |
| 11th to 30th day of violation | $3,000 per day per violation |
| After 30 days of violation | $5,000 per day per violation |

Stipulated penalties paid by HSD for failing to meet a requirement of Paragraph 21 or Appendix E (Outfall 022 Disinfection System Implementation) shall be paid only to the State and shall not exceed $313,500.

52.    The following stipulated penalties shall be applicable for failing to meet any requirement set forth in:  (a) Subsection VI.E. (Developing and Implementing the Final LTCP) and (b) Appendix B (Final LTCP Requirements) of this Decree:

| Period of noncompliance | Penalty |
|---|---|
| 1st to 30th day of violation | $1,500 per day per violation |
| 31st to 60th day of violation | $3,000 per day per violation |
| After 60 days of violation | $5,000 per day per violation |

53.     The following stipulated penalties shall be applicable for failing to meet any requirement set forth in:  (a) Section VI.B (CSO Operations: Maximizing Flow and Treatment); (b) Section VI.C (Revising the CSOOP); (c) Paragraph 37 (Developing and Implementing a SORP); and (d) Section VIII (State SEP):

| Period of noncompliance | Penalty |
|---|---|
| 1st to 30th day of continuous violation | $750 per day per violation |
| 31st to 60th day of continuous violation | $1,000 per day per violation |
| After 60 days of continuous violations | $2,000 per day per violation |

54.     The following stipulated penalties shall be applicable for failing to meet any monitoring or reporting requirements of HSD's NPDES Permit or the requirements set forth in Paragraphs 7, 8, and 12 of this Decree:

| Period of noncompliance | Penalty |
|---|---|
| 1st to 30th day of continuous violation | $250 per day per violation |
| 31st to 60th day of continuous violation | $500 per day per violation |
| After 60 days of continuous violations | $1,000 per day per violation |

55.     The following stipulated penalties shall be applicable for failing to meet any other requirement of the Decree (aside from those specified by Paragraphs 48-54).

| Period of noncompliance | Penalty |
|---|---|
| 1st to 30th day of continuous violation | $250 per day per violation |
| 31st to 60th day of continuous violation | $500 per day per violation |
| After 60 days of continuous violations | $1,000 per day per violation |

32

56.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurred, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.

57.     Stipulated penalties may accrue for alleged violations of requirements for which the compliance due date is prior to the Effective Date of this Decree, but neither EPA nor IDEM may demand or attempt to collect stipulated penalties for any such requirement until after the Effective Date.

58.     Nothing in this Decree shall prevent the simultaneous accrual of separate stipulated penalties for separate violations of this Decree or preclude HSD from asserting any defense it may have under the CWA, its implementing regulations, or its NPDES Permit to any alleged violation of the terms of this Decree.

59.     Subject to the provisions of Section XVII (Covenants Not to Sue / Reservations of Rights), the stipulated penalties herein shall be in addition to any other rights, remedies, or sanctions available to the United States or the State by reason of HSD's failure to comply with the requirements of this Decree, its NPDES Permit, or the CWA. However, if the United States or the State collects a stipulated penalty under this Decree and either (or both) of the Plaintiffs subsequently seeks and is awarded a monetary penalty under the CWA or comparable State laws for the same act or omission, HSD shall receive a credit against the judgment for the amount of the stipulated penalty it paid.

60.     HSD shall pay stipulated penalties to the United States and the State within sixty (60) Days of receiving a written demand by either EPA or IDEM. HSD shall pay fifty (50) percent of each stipulated penalty to the United States and fifty (50) percent to the State. The Plaintiff

making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

61.    Either the United States or the State may, in the unreviewable exercise of its discretion, reduce or waive its portion of stipulated penalties otherwise due it under this Decree.

62.    Stipulated penalties shall continue to accrue as provided in Paragraph 56 during any Dispute Resolution process, but need not be paid until the following:

a.    If the dispute, or any part of the dispute, is resolved by concession of HSD, agreement by the Parties, or by a decision of EPA/IDEM that is not appealed to the Court, HSD shall pay the associated accrued penalties demanded, together with interest, to the United States and the State within thirty (30) Days of the date of such concession, agreement, or the receipt of EPA/IDEM's decision or order.

b.    If the dispute is appealed to the District Court and the United States or State prevails in whole or in part, HSD shall pay all accrued penalties determined by the District Court to be owed, together with interest, within sixty (60) Days of receiving the District Court's decision or order, except as provided in subparagraph c, below.

c.    If any Party appeals the District Court's decision, HSD shall pay all accrued penalties as ordered by the appellate court, or the District Court if the issue is remanded, together with interest, within twenty (20) Days of final adjudication of the dispute.

d.    Where more than one violation of this Decree is raised in a Dispute, and fewer than all of the violations are resolved by HSD's concession, agreement of the Parties, or decision or order by EPA/IDEM that is not appealed to the Court, then HSD shall pay the accrued stipulated penalties associated with the resolved violations, together with interest, to the United States and the State, within 30 Days of such resolution.

34

63.    HSD shall pay stipulated penalties owed to the United States in the manner set forth and with the confirmation notices required by Paragraphs 39 and 40, except that the transmittal letter shall state that the payment is for stipulated penalties and shall identify the violation(s) for which the penalties are being paid. HSD shall pay any stipulated penalty due to the United States by certified or cashier's check in the amount due, payable to the "U.S. Department of Justice," referencing the above-captioned case name, the assigned civil action case number, and DOJ No. 90-5-1-1-3308/2, and shall be delivered to the Financial Litigation Unit of the Office of the United States Attorney for the Northern District of Indiana, Hammond Division, at the following address:

> Financial Litigation Unit for the N.D. of Indiana
> 5400 Federal Plaza, Suite 1500
> Hammond, IN  46320

At the time of payment, HSD shall simultaneously send written notice of such payment and a copy of the transmittal documentation (which should reference the assigned civil action case number and DOJ No. 90-5-1-1-3308/2) to the United States in accordance with Section XII (Notices) of this Decree.

64.    Stipulated penalties owed to the State (including the Stipulated Penalty payment under subparagraph 38.b) shall be made payable by check:

> Cashier:
> Indiana Department of Environmental Management
> 100 N. Senate Ave.
> MC 50-10C
> Indianapolis, IN 46204-2251

HSD shall enclose with all such checks a letter identifying the case name, court, docket number, specific stipulated penalty provision involved, and identification of the violation(s) of this Decree for which the stipulated penalties are being paid. HSD shall send copies of each letter and check to IDEM in accordance with Section XII (Notices) of this Decree.

35

65.    If HSD fails to pay stipulated penalties according to the terms of this Decree, HSD shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for HSD's failure to pay any stipulated penalties.

## X. INFORMATION COLLECTION AND RETENTION

66.    Until termination of this Decree, the United States and the State and their representatives, including attorneys, contractors, and consultants, shall have the authority to enter HSD's POTW at all times upon proper presentation of credentials to the manager(s) of HSD's POTW for the purposes of:

a.    monitoring the progress of activities required by this Decree or undertaken by the Grand Calumet River Restoration Fund Trustee;

b.    verifying any data or information submitted to the United States or the State in accordance with the terms of this Decree;

c.    obtaining samples and, upon request, splits of any samples taken by HSD or its consultants;

d.    obtaining copies of documentary evidence, including copies of photographs and similar data; and

e.    assessing HSD's compliance with this Decree.

67.    Nothing in this Decree shall limit IDEM's authority under Ind. Code § 13-14-2-2.

68.    Upon request, HSD shall provide EPA and IDEM or their authorized representatives with splits of any samples taken by HSD. Upon request, EPA or IDEM shall provide HSD with splits of any samples taken by EPA or IDEM.

36

69.    From the Date of Lodging until two years after the termination of this Decree, HSD shall preserve and retain all non-identical copies of records, reports, documents, and other information (including those in electronic form) now in its possession or control, or that come into its possession or control, that relate to HSD's performance of its obligations under this Decree. Such records shall include relevant modeling inputs and outputs, flow data, rainfall data, inspection records, cleaning records, construction plans or as-built drawings, specifications, construction contracts, final payments and notices of completion, and all reports or plans, in addition to records or documents, as specified by the EPA or IDEM from time to time, that are necessary to evaluate HSD's performance of its obligations under this Decree. HSD may seek a determination from EPA as to whether any particular document or record must be preserved pursuant to this Paragraph by submitting that document or record to EPA. HSD shall instruct its contractors and agents to preserve all non-identical copies of all records, reports, documents, and other information (including those in electronic form) in their respective possession or control that relate to HSD's performance of its obligations under this Decree. This information retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, HSD shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

70.    HSD shall not assert any claim of privilege over factual information or data related to HSD's compliance with effluent limitations or any other condition or requirements of its NPDES Permit, the Clean Water Act, or this Consent Decree. HSD may assert that certain documents, records, and other information are privileged under the attorney-client privilege or any other privilege recognized by State and federal law. If HSD asserts such a privilege in lieu of

37

providing documents, it shall provide the Plaintiffs with the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of the author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the contents of the document, record, or information; and (f) the privilege asserted by HSD.

71.    This Decree in no way limits or affects any rights of entry and inspection, or any right to obtain information held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of HSD to maintain documents, records, or other information imposed by applicable federal or State laws, regulations, or permits.

## XI. COSTS

72.    Each Party shall bear its own costs and attorneys' fees in this action, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the penalties due under Section VII (Payment of Penalties) or any stipulated penalties due under Section IX (Stipulated Penalties) of this Decree, but not paid by HSD.

## XII. NOTICES

73.    Except when specified otherwise, whenever notifications, submissions, or communication are required by this Decree, they shall be in writing and addressed as follows:

**As to the United States**

U.S. Department of Justice:

Via U.S. Postal Service
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
DOJ No. 90-5-1-1-3308/2

*Via Courier*

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
ENRD Mailroom 2121
601 D St. NW
Washington, DC  20004
DOJ No. 90-5-1-1-3308/2

and

United States Attorney's Office
for the Northern District of Indiana
Hammond Division
5400 Federal Plaza
Hammond, IN  46320

EPA:

Chief, Water Enforcement and
Compliance Assurance Branch (WC-15J)
U.S. Environmental Protection Agency, Region V
77 W. Jackson Blvd.
Chicago, IL  60604

and

r5weca@epa.gov (as a text searchable pdf)


**As to the State of Indiana**

Indiana Attorney General:

Chief, Environmental Section
Office of the Attorney General
Indiana Government Center South
5th Floor
402 West Washington St.
Indianapolis, IN  46204

IDEM:

Chief, Compliance Branch
Office of Water Quality, Mail Code 65-40
Indiana Department of Environmental Management
100 N. Senate Ave.
Indianapolis, IN  46204-2251

and

Office of Legal Counsel
Mail Code 60-01
100 North Senate Street
Indianapolis, IN 46204-2251
badmire@idem.in.gov
Phone: (317) 232-8584

**As to HSD**

District Manager
Sanitary District of Hammond
5143 Columbia Ave.
Hammond, IN  46320

74.     On each document submitted to the Plaintiffs, HSD shall identify this Decree and the applicable Paragraph(s) to which the submitted document relates.

75.     All electronic submittals made to EPA must include electronic pdf files that are text searchable and the certification statement in Paragraph 86 of this Decree. The subject of the email correspondence must include HSD's name, the name of the deliverable, and the assigned civil action case number.

76.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

77.     Notifications, submissions, or communications submitted under this Decree shall be deemed submitted on the date they are mailed, unless otherwise provided in this Decree or by mutual agreement of the Parties in writing.

40

78.    All notifications made to Plaintiffs by HSD reporting a violation of this Decree shall be made by courier, except as required by Paragraph 85 of this Decree.

XIII. <u>REPORTING REQUIREMENTS</u>

**A.    <u>Review and Approval of Submissions</u>**

79.    HSD shall submit two copies (one electronic and one hardcopy) of any document requiring EPA and IDEM approval to each agency listed in Section XII (Notices) of this Decree. Following receipt of any report, plan, or other submission by HSD under this Decree, EPA and IDEM may do one of the following, in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the whole submission. Disapproval by EPA and IDEM of any submission subject to agency review and approval under this Decree shall specifically state the reasons for the disapproval.

80.    If the submission is approved pursuant to Paragraph 79.a, HSD shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 79.b or 79.c, HSD shall, upon written direction from EPA and IDEM, take all actions required by the approved plan, report, or other item that EPA and IDEM determine are technically severable from any disapproved or conditionally approved portions, subject to HSD's right to dispute only the specified conditions or the disapproved portions, under Section XV (Dispute Resolution) of this Decree.

81.    If the submission is disapproved in whole or in part pursuant to Paragraph 79.c or 79.d, HSD shall, within thirty (30) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for

41

approval, in accordance with Paragraphs 79 and 80. In any request for extension by HSD pursuant to this Paragraph the Plaintiffs may, in their discretion, consider the scope and complexity of the required resubmission and length of review of the original submission by the Plaintiffs. If the resubmission is approved in whole or in part, HSD shall proceed in accordance with the preceding Paragraph. If the resubmission is disapproved, EPA and IDEM may again require HSD to correct all deficiencies in accordance with this paragraph.

82.    Any stipulated penalties applicable to the original submission, as provided in Section IX (Stipulated Penalties), shall accrue during the thirty (30) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if HSD submits a report, plan, or other submission that fails to contain all of the required elements set forth in the Decree (including all appendices to the Decree and documents incorporated by reference into this Decree), HSD shall be deemed to have failed to make the submission. Where this Decree requires resubmission, if upon resubmission, the report, plan or other submission is disapproved by EPA and IDEM, either in whole or in part, then HSD shall be deemed to have failed to resubmit such report, plan, or other submission timely and adequately, unless HSD invokes the Dispute Resolution Procedures set forth in Section XV within thirty (30) Days after receiving notice of disapproval of the resubmission, and EPA and IDEM's action is overturned pursuant to the dispute resolution process. In the case of a submission that fails to contain all the required elements, stipulated penalties begin to accrue on the date the submission is due. In the case of a disapproved resubmission, stipulated penalties begin to accrue on the date HSD receives written notice of the disapproval.

**B.**     **Supplemental Reporting in Monthly Reports of Operations**

83.     HSD shall submit to EPA, in accordance with Section XII (Notices) of this Decree, a copy of each Monthly Report of Operations ("MRO") that it submits to IDEM pursuant to its NPDES Permit. In any MRO that HSD submits for any month during which it discharged through any CSO Outfall, HSD shall report (a) the volume and duration of the CSO and, if the POTW was not operating at the maximum flow during the Discharge, provide a statement of any operational factors that affected HSD's ability to maximize the treatable flow to the WWTP through the pump station where a CSO occurred; and (b) if HSD asserts that it had a sound technical basis to justify its failure to make use of the ultimate capacity of its pumps as required by Paragraph 13, HSD shall describe the technical basis and provide any supporting documentation.

**C.**     **Quarterly Reports**

84.     Beginning three (3) months from the Effective Date and then every three (3) month period thereafter during the term of this Decree, unless otherwise agreed to by EPA and IDEM in writing, HSD shall report fully in writing to EPA and IDEM on the status of HSD's compliance with all requirements of this Decree during the previous three (3) months. At a minimum, the report shall contain the following:

a.     to the extent not previously provided to EPA and IDEM, Discharge Monitoring Reports, Monthly Reports of Operations, and copies of all pretreatment reports required under HSD's NPDES Permit;

b.     a description of the work HSD has scheduled pursuant to this Decree during the next three (3) month period;

c.     a description of any work required to be performed, pursuant to this Decree, but that HSD has not yet scheduled for the next three (3) month period;

43

d.      a summary of the status of any other actions being taken pursuant to Section VI (Compliance Requirements) of this Decree, including, but not limited to, action related to the Outfall 022 Disinfection System Implementation, the Phase One Post-Construction Compliance Monitoring Program, and the Phase Two Post-Construction Compliance Monitoring Program, and the development and implementation of the Final LTCP;

e.      a description detailing the activities conducted as part of its SORP; and

f.      a discussion of whether HSD is in compliance with requirements of this Decree and a description of and the reasons for any noncompliance, together with the remedial steps taken or to be taken to prevent or minimize any noncompliance. Nothing in this Paragraph or the following Paragraph relieves HSD of its obligation to provide the notice required under Section XVI (Force Majeure) of this Decree. HSD shall investigate the cause of such noncompliance and shall then submit an amendment to the report, including a full explanation of the cause of the noncompliance, within thirty (30) Days from when HSD becomes aware of the cause of such noncompliance. Nothing in this Paragraph or the following Paragraph relieves HSD of its obligation to provide the notice required under Section XVI (Force Majeure) of this Decree.

85.     Whenever any violation of this Decree, any applicable NPDES Permit, or other event affects HSD's performance under this Decree, or the performance of its POTW, such that there may be an immediate threat to public health or welfare or the environment, then HSD shall notify EPA and IDEM orally or by electronic or facsimile transmission, as provided in Section XII (Notices), as soon as possible, but no later than twenty-four (24) hours after HSD first knows of the violation or event. This procedure is in addition to the requirements set forth in the preceding two Paragraphs. Within ten (10) days, HSD shall follow-up its oral, electronic, or facsimile transmission with courier mail notification.

44

86.     Each report submitted by HSD under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

87.     The reporting requirements of this Decree do not relieve HSD of any reporting obligations required by the CWA or its implementing regulations or by any federal, state, or local law, regulation, permit, or other requirement.

88.     Any information provided pursuant to this Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

## XIV. EFFECTIVE DATE

89.     The Effective Date of this Decree shall be the date upon which this Decree is entered by the Court or a motion to enter the Decree is granted, whichever occurs first, as recorded on the Court's docket, provided, however, that HSD hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Decree before entry, or the Court declines to enter the Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

XV. <u>DISPUTE RESOLUTION</u>

90.    Unless otherwise expressly provided for in this Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree. A dispute shall be considered to have arisen when one Party sends the other Parties a written Notice of Dispute.

91.    If Plaintiffs require additional information about any dispute covered by this Section, Plaintiffs may, in their full discretion, attempt to obtain such information from HSD through information requests prior to utilizing other legal authority otherwise available to Plaintiffs.

92.    <u>Informal Dispute Resolution</u>.  Any dispute between the United States or the State and HSD arising under or concerning this Decree shall first be the subject of informal negotiations for a period of fifteen (15) Days from the date one Party sends the other Parties a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period for informal negotiations may be extended by written agreement of the Parties. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States and the State shall be considered binding unless, within fifteen (15) Days after the conclusion of the informal negotiation period, or within the amount of time agreed to in writing by the Parties, HSD invokes formal dispute resolution procedures set forth below.

93.    <u>Formal Dispute Resolution</u>.

a.    HSD shall invoke the formal dispute resolution procedures of this Section, within the time period provided in the preceding Paragraph, by serving on the United States and the State, in accordance with Section XII (Notices) of this Decree, a written Statement of Position on the matter in dispute. The Statement of Position shall include, but need not be limited to, any

46

factual data, analysis, or opinion supporting HSD's position, and any supporting documentation relied upon by HSD.

b.      Within thirty (30) Days after (i) receipt of HSD's Statement of Position, or (ii) any additional information provided by HSD in response to an informal request for information by the United States and the State, if any, whichever is later, the United States and the State shall serve on HSD their Statement of Position, which shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the United States and the State. The position of United States and the State shall be binding on HSD, unless HSD files a motion for judicial review of the dispute in accordance with the following Paragraph.

c.      An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Paragraph. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

94.     Judicial Review.

a.      HSD may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XII (Notices) of this Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) Days of receipt of the Statement of Position of the United States and the State served on HSD pursuant to the preceding Paragraph. The motion shall contain a written statement of HSD's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Decree.

b.      The United States and the State shall respond to HSD's motion within the time period allowed by the Local Rules of this Court. HSD may file a reply memorandum to the extent permitted by the Local Rules.

95.    <u>Standard of Review</u>.

a.      Except as provided in subparagraph c, below, in dispute resolution proceedings governed by Paragraph 93 (Formal Dispute Resolution) or Paragraph 94 (Judicial Review) that pertain to the adequacy or appropriateness of plans; procedures to implement plans or any other items requiring approval by EPA under this CD; the adequacy of HSD's performance of actions taken pursuant to this CD; and all other types of disputes that are accorded review on the administrative record and for which state and federal agencies are afforded deference under applicable principles of administrative law, including the Indiana Administrative Orders and Procedures Act, Ind. Code § 4-21.5 et seq. and the federal Administrative Procedures Act, 5 U.S.C. Subchapter II, HSD shall have the burden of demonstrating that the position of the United States and the State is arbitrary and capricious or otherwise not in accordance with law. Judicial review of the United States' and the State's decision shall be on the administrative record compiled pursuant to Paragraph 93.c.

b.      For dispute resolution proceedings governed by Paragraph 93 (Formal Dispute Resolution) or Paragraph 94 (Judicial Review) that neither pertain to the subjects described in subparagraph a, above, or c, below, nor are otherwise afforded state and federal agency deference under applicable principles of administrative law, including the Indiana Administrative Orders and Procedures Act, Ind. Code § 4-21.5 *et seq*. and the federal Administrative Procedures Act, 5 U.S.C. Subchapter II, HSD shall have the burden of demonstrating that its position clearly complies with and furthers the objectives of this Decree and

48

the Clean Water Act, and that HSD is entitled to relief under applicable law. The invocation of formal dispute resolution procedures under this Section shall not of itself extend, postpone, or affect in any way any obligation of HSD under this Decree, including those in Paragraph 62.d, unless and until final resolution of the dispute so provides. Payment of stipulated penalties with respect to the disputed matter shall be stayed pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall continue to accrue from the first day of noncompliance with any provision of this Decree and shall be paid within fifteen (15) Days after the Court issues an order resolving the dispute or after the resolution of any appeal concerning the dispute. If HSD does not prevail on the disputed issue, stipulated penalties shall be paid, if ordered by the Court, as provided by this Decree.

c.      For dispute resolution proceedings concerning the applicability of the force majeure provisions in Section XVI of this Decree, HSD shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that HSD complied with the requirements of Paragraphs 96 and 97 below. If HSD carries this burden, the delay at issue shall be deemed not to be a violation by HSD of the affected obligation of this Decree identified to EPA and the Court.

## XVI. FORCE MAJEURE

96.     "Force majeure," for purposes of this Decree, is defined as any event arising from causes beyond the control of HSD, or any entity controlled by HSD, or its contractors and subcontractors, that delays or prevents the performance of any obligation under this Decree despite HSD's best efforts to fulfill the obligation. The requirement that HSD exercise "best efforts to

49

fulfill the obligation" includes best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (i) as it is occurring and (ii) following the potential force majeure event, such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. Except as may be provided by Paragraph 30, force majeure does not include HSD's financial inability to perform any obligation or achieve any performance standard under this Decree.

97.     If any event occurs or has occurred that may delay the performance of any obligation under this Decree for which HSD intends or may intend to assert a claim of force majeure, HSD shall notify EPA and IDEM orally or by electronic or facsimile transmission, as provided in Section XII (Notices), within seventy-two (72) hours of when HSD first knew that the event might cause a delay. Within ten (10) Days thereafter, HSD shall provide in writing to EPA and IDEM, in accordance with the requirements of Section XII (Notices) of this Decree:  (a) an explanation and description of the reasons for the delay; (b) the anticipated duration of the delay; (c) all actions taken or to be taken to prevent or minimize the delay; (d) a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; (e) HSD's rationale for attributing such delay to a force majeure event, if it intends to assert such a claim; and (f) a statement as to whether, in the opinion of HSD, such event may cause or contribute to an endangerment to public health, welfare, or the environment. HSD shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. HSD shall be deemed to know of any circumstance of which HSD, any entity controlled by HSD, or HSD's contractors or subcontractors, knew or should have known. Failure to comply with the above requirements regarding an event shall preclude HSD from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late or

50

incomplete notice, is able to assess to its satisfaction whether the event is a force majeure and whether HSD has exercised its best efforts under Paragraph 96, EPA may, in its unreviewable discretion, excuse in writing HSD's failure to submit timely or complete notices under this Paragraph.

98.    If EPA, after a reasonable opportunity for review and comment by IDEM, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify HSD in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event. If EPA, after a reasonable opportunity for review and comment by IDEM, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will, within sixty (60) Days, notify HSD in writing of its decision and the bases supporting its decision.

99.    HSD may elect to invoke the informal dispute resolution procedures set forth in Paragraph 92 of this Decree, or alternatively may elect to immediately invoke formal dispute resolution procedures set forth in Paragraph 93. In either case, HSD shall do so no later than fifteen (15) Days after receipt of EPA's notice of its decision.

## XVII. COVENANTS NOT TO SUE / RESERVATIONS OF RIGHTS

100.    Restatement of Covenants Not to Sue in the 1999 Decree.

a.    The United States' Covenant Not to Sue under the 1999 Decree. The United States' covenants not to sue or take administrative action against HSD for civil liability arising

51

from wastewater discharges from HSD's WWTP, for the violations alleged in the 1993 complaint in United States v. Sanitary District of Hammond, Indiana, et al., 2:93-cv-0255, through April 23, 1999 (the date of lodging of the 1999 Decree), shall remain in full force and effect. The United States' 1993 complaint sought: (i) relief pursuant to CWA §§ 309 or 311, 33 U.S.C. §§ 1319 and 1321; (ii) relief pursuant to the Rivers and Harbors Act, 33 U.SC. § 401 et seq.; and (iii) reimbursement of response costs or other legal or equitable relief resulting from wastewater discharges from HSD's treatment plant pursuant to CERCLA §§ 106 or 107, 42 U.S.C. §§ 9606 and 9607, or RCRA § 7003, 42 U.S.C. § 6973.

      b.    <u>The State's Covenant Not to Sue under the 1999 Decree</u>. The State's covenants not to sue or take administrative action against HSD for any civil liability arising from wastewater discharges from HSD's treatment plant, for the violations alleged in the 1993 complaint in United States v. Sanitary District of Hammond, Indiana, et al., 2:93-cv-0255, through April 23, 1999 (the date of lodging of the 1999 Decree), shall remain in full force and effect. The State's Cross-Claims sought: (i) relief pursuant to 327 Ind. Admin. Code 5-12-1; 327 Ind. Admin. Code 5-11-5; 327 Ind. Admin. Code 2-1; 327 Ind. Admin. Code 5-2-4(a)(3); Ind. Code §§ 13-2-22-13, 13-30-2-1, 13-18-4-5, and 34-1-52; (ii) relief pursuant to CWA §§ 309 and 311, 33 U.S.C. §§ 1319 and 1365; and (iii) reimbursement of response costs or other legal or equitable relief pursuant to CERCLA §§ 107 or 113, 42 U.S.C. §§ 9607 or 9613.

      101.    <u>United States' Covenant Not to Sue for Violations Alleged in the 2017 Complaint</u>.

      Subject to the United States' reservation of rights set forth in Paragraph 103 of this Decree, upon payment by HSD of all amounts, including interest, required by Section VII (Payment of Penalties) of this Decree, and in consideration of the injunctive relief to be performed under Section VI (Compliance Requirements) of this Decree, the United States covenants not to sue or

take administrative action against HSD for civil liability arising from: (i) any violations pertaining to HSD's compliance with the Information Request issued by EPA on February 22, 2012, pursuant to CWA § 308, 33 U.S.C. § 1318; (ii) violations of the 1999 Decree; and (iii) violations alleged in the 2017 Complaint, through the Date of Lodging of this Decree.

102.    <u>State's Covenant Not to Sue for Violations Alleged in the 2017 Complaint</u>.

Subject to the State's reservation of rights set forth in Paragraph 104 of this Decree, upon payment by HSD of all amounts, including interest, required by Section VII (Payment of Penalties) of this Decree, the State covenants not to sue or take administrative action against HSD for civil liability arising from: (i) violations of the 1999 Decree; and (ii) violations alleged in the 2017 Complaint, through the Date of Lodging of this Decree.

103.    <u>United States' Reservation of Rights</u>.  The covenants not to sue set forth in Paragraphs 100.a and 101 above shall apply only to matters expressly set forth in those Paragraphs. The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree, except as expressly stated in Paragraphs 100.a and 101. This Decree shall not be construed to limit the rights of the United States to pursue the following:

        a.      Claims based on HSD's failure to satisfy any requirement of this Decree;

        b.      Claims for stipulated penalties, if any, under the terms of this Decree;

        c.      Claims for criminal liability;

        d.      Claims that a Discharge may pose an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, HSD's POTW, whether related to the violations addressed in this Decree or otherwise, in accordance with CWA § 504, 33 U.S.C. § 1364, or equivalent State law provisions;

53

e.    Claims for liability arising from information previously unknown to the United States about the nature, characteristics, or volume of any wastewater discharges from HSD through the Date of Lodging of this Decree. For purposes of this reservation, the information known to the United States shall include only that information in the possession of the United States as of the Date of Lodging of this Decree; and

f.    Claims for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments resulting from wastewater discharges from HSD's POTW, pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), or Oil Pollution Act § 1002(b)(2), 33 U.S.C. § 2702(b)(2).

104.    <u>State's Reservation of Rights</u>.  The covenant not to sue set forth in Paragraphs 100.b and 102 above shall apply only to matters expressly set forth in those Paragraphs and shall not apply to any other matter, including any of the following claims:

a.    Claims based on HSD's failure to satisfy any requirement of this Decree;

b.    Claims for stipulated penalties, if any, under the terms of this Decree;

c.    Claims for criminal liability;

d.    Claims for liability arising from information previously unknown to the State about the nature, characteristics or volume of any wastewater discharges from HSD through the Date of Lodging of this Decree. For purposes of this reservation, the information known to the State shall include only that information in the possession of the State as of the Date of Lodging of this Decree; and

e.    Claims for damages for injury to, destruction of, or loss of natural resources, including, but not limited to, the reasonable costs of assessing such injury, destruction or loss

54

resulting from wastewater discharges from HSD's POTW pursuant to CERCLA §107(a), 42 U.S.C. § 9607(a), or Oil Pollution Act § 1002(b)(2), 33 U.S.C. § 2702(b)(2).

105.    The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the POTW, whether related to the violations addressed in this Decree or otherwise.

106.    Nothing in this Decree shall be construed to limit the authority of EPA to obtain information from any person, including HSD, pursuant to CWA § 308, 33 U.S.C. § 1318.

107.    Nothing in this Decree shall be construed to limit the State from exercising its police powers in response to evidence indicating that HSD is, by itself or in combination with other sources, presenting an imminent and substantial endangerment to the health or welfare of any person.

108.    Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications on the part of HSD shall not be cause for extension of any required compliance date in this Decree.

109.    Nothing in this Decree limits the rights or defenses available to any Party under CWA § 309(e), 33 U.S.C. § 1319(e), in the event that the laws of the State, as currently or hereafter enacted, may prevent HSD from raising the revenues needed to comply with this Decree.

110.    This Decree does not limit or affect the rights of HSD, the United States, or the State against any third party not a party to this Decree, nor does it limit the rights of any third party not a party to this Decree against HSD, except as otherwise provided by law.

XVIII. GENERAL PROVISIONS

55

111.    This Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations, including, but not limited to, CWA §§ 307 and 402, 33 U.S.C. §§ 1317 and 1342. HSD is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and HSD's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Decree, warrant or aver in any manner that HSD's compliance with any aspect of this Decree will result in compliance with provisions of the CWA, 33 U.S.C. § 1251 *et seq*., or with any other provisions of federal, State, or local laws, regulations, or permits.

## XIX. RETENTION OF JURISDICTION

112.    The Court shall retain jurisdiction over this case, the subject matter of this action, and over the parties until termination of this Decree for the purpose of resolving disputes arising hereunder; entering orders modifying this Decree pursuant to Sections XV (Dispute Resolution) and XX (Modification) of this Decree; or effectuating or enforcing compliance with the terms of this Decree.

## XX. MODIFICATION

113.    The terms of this Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all of the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

114.    Any disputes concerning modification of this Decree, as it is defined in Section V (Definitions), shall be resolved pursuant to Section XV (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 94, the party seeking the modification

of the Decree bears the burden of demonstrating that it is entitled to the requested modification in accordance with Fed. R. Civ. P. 60(b).

## XXI. <u>TERMINATION</u>

115.    After HSD complies with all of its obligations under this Decree, including, but not limited to: (a) all requirements set forth in Section VI (Compliance Requirements) of this Decree; (b) payment of the civil penalties for the alleged violations of CWA § 301, 33 U.S.C. § 1311, *et seq.*, and any interest accrued; (c) payment of the stipulated penalties for alleged violations of the 1999 Decree and any interest accrued; and (d) after HSD has achieved satisfactory compliance with the terms and conditions of its NPDES Permit, the CWA, and applicable State laws governing water pollution control and water quality for a period of at least one year, then HSD may serve upon the United States and the State, consistent with Section XII (Notices) of this Decree, a Request for Termination of this Decree stating that HSD has satisfied the requirements above, together with all necessary supporting documentation.

116.    Following receipt by the United States and the State of HSD's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether HSD has satisfactorily complied with the requirements for termination of this Decree. If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

117.    If the United States, after consultation with the State, does not agree that the Decree may be terminated, HSD may invoke Dispute Resolution under Section XV of this Decree. However, HSD shall not seek Dispute Resolution of any dispute regarding termination under

Paragraph 92 (Informal Dispute Resolution) of Section XV (Dispute Resolution) of this Decree until ninety (90) Days after service of its Request for Termination.

## XXII. PUBLIC COMMENT

118.    The Parties agree and acknowledge that final approval by the United States and entry of this Decree by this Court are subject to the requirement of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Decree, opportunity for public comment, and the consideration of any public comment. The United States reserves the right to withhold or withdraw its consent to this Decree if any comment regarding the Decree discloses facts or considerations that indicate the proposed settlement is inappropriate, improper, or inadequate. HSD consents to the entry of this Decree without further notice and agrees not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified HSD in writing that it no longer supports entry of the Decree.

## XXIII. INTEGRATION

119.    This Decree, its Appendices, and the approved Final LTCP that shall be developed hereunder, constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written. Other than the Appendices that are attached to and incorporated in this Decree, and the Final LTCP that shall be developed and approved under this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV. APPENDICES

120.    The following appendices are attached to and incorporated into this Decree:

58

Appendix A    Requirements for HSD's Phase One Post-Construction Compliance
Monitoring Program

Appendix B    Final Long Term Control Plan Requirements and Schedule

Appendix C    Requirements for HSD's Sewer Overflow Response Plan (SORP)

Appendix D    Firm Pumping Capacities of HSD's Sewer System Pump Stations

Appendix E    Outfall 022 Disinfection System Implementation

Appendix F    State Supplemental Environmental Project

121.    In the event of a conflict between any provision in the Decree and any provision of
an Appendix, the provision of the Decree shall control.

## XXV. AUTHORIZATIONS AND SERVICE

122.    Each undersigned representative of HSD, the Deputy Assistant Attorney General
of the Environment and Natural Resources Division of the United States Department of Justice,
EPA, the Indiana Attorney General, and IDEM certifies that he or she is fully authorized to enter
into the terms and conditions of this Decree and to execute and legally bind the Party he or she
represents to this document.

123.    This Decree may be signed in counterparts, and its validity shall not be challenged
on that basis.

124.    HSD agrees to accept service of process by mail with respect to all matters arising
under or relating to this Decree and to waive the formal service requirements set forth in Rules 4
and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court,
including, but not limited to, service of summons.

## XXVI. <u>FINAL JUDGMENT</u>

125.    Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment as to the United States, the State, and HSD. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

**SO ORDERED**

Date May 8, 2017

s/ James T. Moody\
JUDGE JAMES T. MOODY\
UNITED STATES DISTRICT COURT

THE UNDERSIGNED PARTY enters into this CONSENT DECREE in this action captioned *United States and the State of Indiana v. The Sanitary District of Hammond* (N.D. Ind.) (02:17-cv-0048).

**FOR THE UNITED STATES OF AMERICA**

DATE: 1/26/2017          By:    */s/ Bruce S. Gelber*
                                BRUCE S. GELBER
                                Deputy Assistant Attorney General
                                Environment & Natural Resources Division
                                U.S. Department of Justice
                                Washington, DC  20530

DATE: 2/3/2017           By:    */s/ Jennifer A. Lukas-Jackson*
                                JENNIFER A. LUKAS-JACKSON
                                Senior Attorney
                                Environmental Enforcement Section
                                Environment & Natural Resources Division
                                U.S. Department of Justice
                                P.O. Box 7611, Ben Franklin Station
                                Washington, DC  20044
                                (202) 305-2332
                                jennifer.lukas-jackson@usdoj.gov


                                DAVID A. CAPP
                                United States Attorney
                                Northern District of Indiana


                                SHARON JEFFERSON
                                Assistant United States Attorney
                                Northern District of Indiana
                                5400 Federal Plaza
                                Hammond, IN  46320
                                (216) 937-5681

THE UNDERSIGNED PARTY enters into this CONSENT DECREE in this action captioned *United States and the State of Indiana v. The Sanitary District of Hammond* (N.D. Ind.) (02:17-cv-0048).


DATE: 2/2/2017            */s/ Robert A. Kaplan*
                         ROBERT A. KAPLAN
                         Acting Regional Administrator
                         U.S. Environmental Protection Agency, Region 5
                         77 West Jackson Blvd.
                         Chicago, IL  60604



DATE: 2/1/2017           */s/ Nicole Cantello*
                         NICOLE CANTELLO
                         Attorney-Advisor
                         U.S. Environmental Protection Agency, Region 5
                         77 West Jackson Blvd. (C-14J)
                         Chicago, IL  60604

THE UNDERSIGNED PARTY enters into this CONSENT DECREE in this action captioned *United States and the State of Indiana v. The Sanitary District of Hammond* (N.D. Ind.) (02:17-cv-0048).

DATE: 1/30/2017                          */s/ Mark Pollins*
                                         MARK POLLINS
                                         Division Director
                                         Water Enforcement Division
                                         Office of Civil Enforcement
                                         Office of Enforcement and Compliance Assurance
                                         United States Environmental Protection Agency

DATE: 1/30/2017                          */s/ Sushila Nanda*
                                         SUSHILA NANDA
                                         Senior Attorney Advisor
                                         Water Enforcement Division
                                         Office of Civil Enforcement
                                         Office of Enforcement and Compliance Assurance
                                         United States Environmental Protection Agency

THE UNDERSIGNED PARTY enters into this CONSENT DECREE in this action captioned *United States and the State of Indiana v. The Sanitary District of Hammond* (N.D. Ind.) (02:17-cv-0048).

**FOR THE STATE OF INDIANA**

**INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT**

DATE: 1/31/2017                    */s/ Bruno L. Pigott*
                                   BRUNO L. PIGOTT
                                   Commissioner
                                   Indiana Department of Environmental Management
                                   100 North Senate St.
                                   P.O. Box 6015
                                   Indianapolis, IN  46206

Approved as to form and legality:

DATE: 1/31/2017                    */s/ Elizabeth Admire*
                                   ELIZABETH ADMIRE
                                   Attorney
                                   Indiana Department of Environmental Management
                                   100 North Senate St.
                                   P.O. Box 6015
                                   Indianapolis, IN  46206

DATE: 2/1/2017                     */s/ Patricia Orloff Erdmann*
                                   PATRICIA ORLOFF ERDMANN
                                   Chief Counsel for Litigation
                                   Office of the Indiana Attorney General
                                   402 W. Washington Street
                                   IGCS, 5th Floor
                                   Indianapolis, IN 46204

THE UNDERSIGNED PARTY enters into this CONSENT DECREE in this action captioned *United States and the State of Indiana v. The Sanitary District of Hammond* (N.D. Ind.) (02:17-cv-0048).

**FOR THE SANITARY DISTRICT OF HAMMOND, INDIANA**

DATE: <u>1/24/2017</u>          By: <u>Dean D. Button</u>
                                    President, Sanitary District
                                    Board of Commissioners